BURRILL DAVIS v. THE STATE.

1. RAPE. At Common Law, an indictment for rape must charge that the
   accused " did ravish ; " the use of the noun " rape," instead of the verb
   " ravish," is insufficient.
2. RAPE OF A FEMALE UNDER TEN YEARS OF AGE. As carnal knowledge,
   with or without consent, of a female under ten years of age, is rape, the
   allegations of force and want of consent are immaterial, and mere sur-
   plusage, and if alleged need not be proved.
3. INDICTMENT. It is not necessary in an indictment for rape to charge that
   the accused was over fourteen years of age at the time of the offense ;
   if under that age such fact is matter of defense.
4. PENETRATION. See testimony, held inconclusive of guilt, as to penetra-
   tion.
5. Medical testimony should be had in investigations of cases of rape upon a
   female under ten years; an examination of the injured party should be
   had ; and every source of knowledge of the fact explored.

APPEAL from DeWitt. Tried below before Hon. D. D.
Claiborne.

Burrill Davis was charged by indictment that he " unlaw-
" fully, wickedly, feloniously and of his malice aforethought
" in and upon Mary Schwab, then and there, a female under the
" age of ten years, did make an assault, and he, the said Burrill
" Davis, did by force then and there her, the said Mary Schwab,
" rape, penetrate and carnally know, without the consent then
" and there of her, the said Mary Schwab."

On the trial the injured party, Mary E. Schwab, being ex-
amined by the court, was pronounced incompetent to testify on
account of want of understanding the obligation of an oath.

Mrs. Betty Schwab testified that Mary Schwab, the person
alleged to have been injured, was her daughter, over eight years
old now; was eight years old Sept. 16, 1874 (trial was in De-
cember of that year); that between 12 M. and 1 P. M. of the
14th of Sept., 1874, in De Witt county, Texas, the accused was
called by witness to dinner, he being a colored laborer em-
ployed by the husband of witness to pick cotton, not far from

the dwelling.    Accused not obeying her call she sent her daughter Mary (alleged to have been injured) to tell him to come to dinner; waiting a reasonable time for him to come to dinner after he was sent for by her daughter, witness became uneasy about the cause of his delay, and that of her daughter Mary, and went out in quest of them ; having proceeded about twenty steps from the house into the cotton patch, witness suddenly came upon the defendant and her daughter Mary E. Schwab.    The defendant was lying on his left side, on the ground, with Mary, her daughter, in his arms and in the act of copulation.    The defendant remarked, " Mrs. Betty, you have caught me," and caught witness by her clothes and hung on to her, begging her not to tell on him, jumped up and followed witness to the fence a few yards off, as she led her daughter Mary away, partly dragging her feet after her, as she was led away, saying he squeezed her so tight she could not hallo, and crying apparently from pain from the defendant's treatment. The defendant then ran off towards the river for his house. No one else being present, witness led and dragged her daughter to her German neighbor, Martha Swaab's house, where she (Mary) lay most of that evening abed, complaining of pain and hurting of her side and head, and with fever; that the next day, and afterwards, she was able to sit up some and help nurse the children at Martha Swaab's, but always at the time, and frequently since then, complaining of her side and head, and having fever accompanying her side complaints.

(The remaining part of this witness's testimony is given in the opinion.)

The accused was convicted, and his punishment fixed at hanging.    After sentence he has appealed.


*W. R. Friend*, for appellant, cited Wharton's Cr. Law, vol. 2, Sec. 1138, 1139, 1146 and notes 1149 ; 1 Hale, 628, 631; 1 Hawkins, Ch., 41 ; 4 Black. Com., 213 ; State *v.* Johnson, 11 Texas, 32 ; State *v.* Williams, 36 Texas, 352 ; Cain *v.* State, 18 Texas, 387 ; Stephanes *v.* State, 21 Texas, 206.

*George Clarke*, for State, cited Wharton's Am. Cr. Law, Sec. 1137, 1139; 2 Bishop, Am. Cr. Law, Sec. 1132; Roscoe's Cr. Ev., 808; Wharton & Stille, Med. Juris., Sec. 427 *et seq.*; 1 Russ on Cr., 678, 679; 11 Cush., 547; 29 Cal., 575; 2 Bish. Cr. Proc., Sec. 954.

MOORE, J. The objections urged against the indictment are not well taken. It is not drawn with grammatical accuracy, or in strict conformity with common law precedents. The only material defect in it, however, in these particulars, is in the improper substitution of the noun "rape" for the verb "ravish." It is unquestionably well settled that an indictment for this offense under the common law must contain the word "rav-"ish." To charge merely that the defendant "did carnally "know," etc., is not sufficient to support the indictment. The reason given for this is that, by the charge "did ravish," force and violence by the man, and want of consent of the woman, are implied, while by that of "carnal knowledge" merely, they are not (Harman *v.* The Commonwealth, 12 S. & R. 69). But the offense with which the appellant in this case is charged, is the rape of a female under ten years of age, which as defined by the code, is the carnal knowledge of such female, with or without consent, and with or without the use of force, threats or fraud. (C. C., Art. 523). Whether the averment, as in this indictment, that the carnal knowledge was had by force, and without consent, would obviate the necessity of the specific charge that the defendant "did ravish" in an indictment for the rape of a female over ten years of age, or if not, whether the averment that he "did rape" would not be "understood in "common language, taking into consideration the context and "subject matter relative to which" these words "are employed" in the indictment, should not be held to impart the same meaning as "did ravish," need not be determined at present.

The essential fact which constitutes the offense with which appellant is charged, is unquestionably alleged in the indictment with as much fullness and perspicuity as is required

Indeed, the most plausible objection to the conviction under the indictment is, that although it was unnecessary to do so, still, as the offense is alleged to have been committed without consent, and by force, it became thereby incumbent upon the State to prove these unnecessary averments. They were probably inserted in the indictment lest it might turn out on the trial, that the female alleged to have been injured was, in fact, over ten years of age ; in which event, unless the word rape, as we have said, should be held as synonymous, as used, with ravish, the indictment would have been unquestionably insufficient to sustain a conviction. But when the facts were developed in the trial, the offense committed by appellant, if guilty of rape, was by injury done a female by reason of whose tender years neither force, or threats, or want of consent were essential constituents of the offense, and looking at and treating the indictment as applicable to the case before the court, we think we are warranted in regarding these averments as mere surplusages which it was unnecessary for the State to prove in order to warrant appellant's conviction.

It is positively enacted and ordered by the code that persons under the age of fourteen are incapable of committing rape. But this is in a distinct and subsequent article from that in which the offense is defined and prohibited. It was, therefore, under the well-settled rules of criminal pleading, unnecessary to allege appellant's age in the indictment for the purpose of affirming his capacity to commit the offense.

The instruction of the court, to the extent to which it went, is unquestionably strictly accurate and correct. In view, however, of the nature of the case, the passion and feeling, if not prejudice, which such a charge as that preferred in the indictment is calculated to arouse, and the character of the essential question upon which its proper determination evidently turned, and meagre, indefinite, and, to some extent, at least, unsatisfactory, if not contradictory evidence, from which the conclusion of the jury was to be drawn, we cannot but think the charge of the court was neither so full nor perspicuous in

directing the attention of the jury to the real issue in the case as it might and should have been.

The only question upon which the testimony left any room for dispute or ground upon which to rest an opinion was, whether the alleged offense had been completed by penetration. While the slightest penetration is sufficient, still there must be satisfactory proof of *some* to consummate the offense. It must be shown, says Tindal, C. J., that the private parts of the male entered, at least, to some extent, those of the female. Unless this is the case, the accused may be guilty of an attempt to commit the crime of rape, but not of its actual commission.

The proof upon this point, consisted of the evidence stating the position in which appellant and the girl, alleged to have been ravished, were found by her mother, the red and swollen condition of her private parts, and the witness's statement that she was convinced and fully satisfied from what she saw take place at the time, and also from her examination of the person of her daughter, that there had been penetration. On the other hand, she testified that there was no laceration or blood that she could discover, resulting from such penetration, and a surgeon, who was examined as a witness, stated, after having made a private examination of appellant, that though there were exceptions to the rule, a man of his dimensions could not evidently, or *probably*, penetrate a female of the age and size of the girl alleged to have been injured, without laceration. He also stated, however, if she could be so penetrated, the condition of her parts, as described by her mother, would be a natural consequence of the act.

This reference to the testimony shows (as, we regret to say, we find of much too frequent occurrence in cases of the greatest importance) a want of that full and thorough development and exploration of all the facts and circumstances connected with and bearing on the case, of which it would seem to be reasonably susceptible, and such as its vital importance evidently demands. No medical examination of the child was made, nor was the physician, who testified in the case, interrogated in

reference to the symptoms described by the mother, except in the particular previously referred to. The time and circumstances under which the mother made her examination are not shown. The neighbor, to whose house she was taken immediately after the alleged act, was not examined. It does not appear whether the child's under-clothing was inspected, and many other matters tending to aid in a correct conclusion, do not appear to have been adverted to, so far as we can see from the statement of facts.

It is said by Wharton, in his work on criminal law, after commenting on several English cases, discussing the necessity of proof of penetration: "The practice seems to be, to judge "from the cases just cited, not to permit a conviction in these "cases, in which it is alleged violence has been done, without "medical proof of the fact whenever such proof was attainable. "It seems but right, both in order to rectify mistakes and to "supply the information necessary to convict, that the prosecu- "trix should be advised at the outset, so that she can take the "necessary steps to secure such an examination in due time. "If this principle be generally insisted upon, there is no dan- "ger of any conviction failing because of non-compliance with "it, and, on the other hand, many mistaken prosecutions will "be stopped at the outset." (Sec. 1138.)

While we cannot say that the necessity of a medical examination has been regarded as absolutely indispensable to a conviction in all cases by the American courts, or that we are prepared to yield our assent to so broad and unqualified a proposition as seems to be approved by this able commentator, yet, we think, the great and essential importance of this character of evidence cannot be denied, and especially in cases like this, where the party alleged to be injured is incapable of testifying, and the proof of penetration can be established by circumstantial testimony only, and that by no means of an absolute or conclusive character, it can hardly be overestimated.

These considerations lead us to the conclusion—without, how-

ever, intending to intimate any opinion as to the proper conclusion which should be reached in a more full and careful consideration of the case—that, in view of the vague and indefinite, and somewhat contradictory testimony on which it was tried, the absence of such instructions as would probably have enabled the jury to have given a more full and thorough consideration to the evidence applicable to the only real and vital question in the case, the nature of the offense, the circumstances under which it is alleged to have been committed, the difficulty of disproving the charge in most cases of this kind when unfounded, the extreme penalty of the law imposed by the verdict, and the humane and merciful principle of our criminal law, giving the accused the benefit of all reasonable doubt, the motion for a new trial should have been granted.

The judgment is reversed, and the cause remanded.

Reversed and remanded.